**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE LEIGH WHITAKER, et al.** | : | **Case No. 1:18-cv-00540-WOB** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Judge William O. Bertelsman** |
| **v.** | : | |
| | : | |
| **JUDGE JOSEPH W. KIRBY,** | : | |
| | : | |
| **Defendant.** | : | |

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

Defendant Judge Joseph W. Kirby moves this Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6) for the following reasons:

1. Plaintiff Whitaker's claims fail based on *Rooker-Feldman* abstention.

2. Plaintiff Whitaker and Shaul's claim fail based on *Younger* abstention

3. Plaintiff Doe lacks standing because she has failed to allege facts showing a live case or controversy.

4. Judge Kirby is entitled to absolute immunity from civil liability under 42 U.S.C. § 1983 for both money damages and declaratory judgment. To the extent that Plaintiffs seek money damages, such claims are barred by the Eleventh Amendment.

5. Plaintiffs' Equal Protection claims fail because the only categorical distinctions that Judge Kirby is alleged to have made are based on age (not sex), and Judge Kirby had a rational basis for his decision regarding name changes based on the age of the applicant.

A Memorandum in Support is attached.

Respectfully submitted,

/s/ *Aaron M. Glasgow*

J. Stephen Teetor      (0023355)
E-mail: jteetor@isaacwiles.com
LEAD COUNSEL
Aaron M. Glasgow    (0075466)
E-mail: aglasgow@isaacwiles.com
ISAAC WILES BURKHOLDER & TEETOR, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 220-5170 / P: (614) 365-9516
*Attorneys for Defendant*


## MEMORANDUM IN SUPPORT

### I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' allegations ignore the fact that Defendant Judge Joseph W. Kirby ("Judge Kirby") has granted multiple transgender name changes, including name changes for both transgender adults and minors, and Judge Kirby has even reversed a Magistrate's denial of a minor transgender name change, all of which is in public rulings for which this Honorable Court can take judicial notice.  See *Clark v. Donahue*, S.D. Ohio No. 2:11-cv-597, 2012 Ohio LEXIS 110274, at *10, citing *Amini v. Oberlin* College, 259 F.3d 493, 502 (6th Cir. 2001).  However, even though Plaintiffs' lead counsel has now withdrawn, and even if the allegations of Plaintiffs were true (which they are not), their complaint is insufficient to state a claim as a matter of law.

In this case, Plaintiffs disregard basic tenants of federalism, abstention and judicial immunity.  The facts alleged in the Complaint are insufficient to support Plaintiffs' claims based on the pleadings under Fed. R. Civ. 12(B)(6).

There are three Plaintiffs in this case, all of whom are parents of transgender minors who want approval to change their names. Judge Kirby is an Ohio Probate Judge who has decided or will decide whether to approve those name changes, a decision that is vested with the probate court under R.C. § 2717.01.

The first Plaintiff (Stephanie Leigh Whitaker) asks this Court to intervene and overrule a substantive decision by a state court judge about a matter that is clearly within Judge Kirby's jurisdiction to decide under Ohio law, even though Plaintiff has appealed the same decision to the state court of appeals. Federal courts are not to act as courts of appeal over the decisions of state courts under the *Rooker-Feldman* doctrine. As such, this request is improper under the *Rooker-Feldman* abstention doctrines and should be denied.

The second Plaintiff (Jennifer Shaul) has an application pending before Judge Kirby. By seeking a declaration that Judge Kirby's anticipated decision would be unlawful, Plaintiffs are essentially asking this Court to intervene in that proceeding, as well as dictate to Judge Kirby what his decision must be on that pending application. This request is improper under the *Younger* abstention doctrine and should be denied.

The third Plaintiff (Jane Doe) is the parent of an anonymous transgender minor who resides in Warren County and is considering petitioning for a name change. This Plaintiff has apparently had no communication with the Court on the issue and has not actually filed an application, but believes that the application for name change may be denied based on the prior decision. Thus, by seeking a declaration regarding a prior name change decision, Plaintiff Doe is essentially seeking, via this Court, to dictate to Judge Kirby how he must rule on Plaintiff Doe's application, *if and when* Plaintiff Doe files a name change application and regardless of the evidence that may be presented therein. This request is improper as it does not present an actual

3

case or controversy for this Court to decide, as Plaintiff Doe cannot show an actual injury for which this Court can fashion a remedy. Moreover, if Plaintiff Doe overcomes this issue by actually filing an application, that claim will be subject to the same abstention objections as the other two Plaintiffs.

Moreover, there is no question that Judge Kirby is being sued specifically because of the way that he ruled in a case before him. He is absolutely immune from liability for his decisions about cases that are within his jurisdiction to decide. This immunity is not limited only to claims for damages, but also includes immunity from declaratory judgment claims.

Finally, to the extent that Judge Kirby has made any categorical distinctions that resulted in the denial of name change applications, those distinctions are based on the age and status of the applicant and not whether the applicant is transgender or not. This is established within the Complaint, which acknowledges that Judge Kirby has approved *all* name change applications before him for transgender adults. Age-based distinctions are subject only to rational basis review. Thus, Judge Kirby need only provide *some* reason for his decision that is rationally related to a legitimate governmental interest. In his decision in the Whitaker case, Judge Kirby provided ample reasoning for his decision denying the name change, and these reasons satisfy the lower standard of rational basis.

## II.    FACTS

Judge Kirby is the Probate Judge in Warren County. (Doc. 1, Complaint, Page ID#3). In Ohio, probate judges have the authority and obligation to hear applications asking for the change of the applicant's name. See R.C. § 2717.01(A). This includes applications from both adults and minors, though minors may only petition through their parents or guardians. See R.C. § 2717.01(B). R.C. § 2717.01(A) requires the court to determine whether the facts set forth in the

name change application show reasonable and proper cause for changing the name of the applicant. *In re Willhite,* 85 Ohio St. 3d 28, 30, 1999-Ohio-201.  When deciding whether to permit a name change for a minor child pursuant to R.C. 2717.01(A), the trial court must consider the best interests of the child in determining whether reasonable and proper cause has been established. Id. at 32.  And while a Probate Judge may delegate the task of hearing name change applications to magistrates, the Probate Judge still reviews and adopts or rejects the recommendation of the Magistrate Judge for the decision to become final, as part of the Judge's supervisory power.  See R.C.  § 2101.01(A).

Plaintiffs have wrongfully alleged that Judge Kirby has a bias against transgender people, which is allegedly reflected in a pattern and practice of denying name-change applications for transgender applicants.  (Doc. 1, Complaint, Page ID#32).  This is untrue.  As is often the case, reality is more complicated and reflects that Judge Kirby does exactly what the statute and case law tells him to do: he looks at each name change application on a case-by-case basis and makes determinations in each case based on the specific circumstances and evidence presented in each case.

As to adults, any suggestion of differential treatment of transgender individuals is patently false, as demonstrated by Plaintiffs' own pleadings.  Based on the chart set forth in the Complaint, Judge Kirby approved six name change applications for transgender adults in 2018.  (Doc. 1, Complaint, Page ID#16 – 17).  During the same time, he has not denied any name change applications to transgender adults.  As such, any claim that Judge Kirby generally treats transgender people differently because of their transgender status is spurious and undermined by Plaintiffs' own pleadings.

As to transgender minors seeking name changes, the issue is more complicated.  While it is accurate that Judge Kirby has denied some name change applications to transgender minors, it is also true that Judge Kirby has *approved* name change applications for transgender minors.  As noted in the Complaint, there was a transgender minor name change application that was granted on April 10, 2018 in case number 2018-9028.  In the Complaint, however, this decision was incorrectly attributed to a magistrate, whereas it was actually Judge Kirby who heard the case and granted it. (See attached Exhibit A).  In addition, by focusing narrowly on the cases decided in 2018, Plaintiffs missed the fact that Judge Kirby approved additional name change applications for transgender minors prior to 2018.

For instance, on September 29, 2016, Judge Kirby personally approved a name change application for a transgender minor, changing the minor's name from female to male. (See attached Exhibits B).  In that case, the Magistrate recommended *denial* of the name change application, based on the individual circumstances of the applicant (including age, maturity and short period of time in transition). Id. The applicant objected to the decision.  On review, Judge Kirby reversed the Magistrate, siding with the applicant and *granting* the request of the transgender minor for a name change. Id.

On December 28, 2017, Judge Kirby personally approved a name change application for a teenage minor transitioning from a female to a male.  (See attached Exhibit C).

In addition, Judge Kirby has also reviewed and approved the decisions of a Magistrate approving name change applications of transgender minors on September 16, 2014 (Exhibit D), August 11, 2015 (Exhibit E), March 21, 2016 (Exhibit F), March 21, 2017 (Exhibit G) and August 11, 2017 (Exhibit H).

The point is this:  Judge Kirby and his staff are performing their statutory duty to review and decide name change applications exactly as they are directed to do—which is to review those applications based on the circumstances of each child, applying the "best interest" standard.  In some cases, the result of that process is a finding that the name change is appropriate, sometimes not.  But in light of these other decisions—which Plaintiffs have chosen to ignore—there is little support for the notion that Judge Kirby has decided his cases based on some underlying bias against transgender individuals.

It is within this context that this Court should consider Plaintiffs' Complaint, which is an invitation by the Plaintiffs to intervene in state court proceedings to either reverse (in the case of Whitaker) or direct (in the case of Shaul and Doe) the decisions of the Warren County Probate Court.  This invitation is thoroughly inappropriate, given the purposes of the abstention doctrines of *Rooker-Feldman* and *Younger*, and the basic immunity limitations placed on persons seeking to sue judges purely based on their disagreement with their decisions.  As set forth above, it is completely untrue that Judge Kirby has a policy that discriminates against transgender persons.  However, even if Plaintiffs had some colorable claim to that effect, their proper avenue for relief would be through the state appeals court.  Plaintiffs' attempt to end-run around that Appellate Court by challenging Judge Kirby's decision here should not be permitted.

## III.    LAW AND ARGUMENT

### A.    Plaintiff Whitaker's claims must be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* abstention doctrine.

Plaintiff Whitaker's claims must be dismissed under the *Rooker-Feldman* abstention doctrine. Plaintiff Whitaker has appealed Judge Kirby's decision denying her child's name change application to the Twelfth District Court of Appeals, where it is currently pending. Despite the appeal, Plaintiff Whitaker has also filed this action challenging Judge Kirby's

decision and asking this Court for a declaration that the decision was unlawful.  In this lawsuit, Plaintiffs are asking this Court to review and overturn Judge Kirby's decision.  This effort is barred by *Rooker-Feldman*, which provides that federal courts (other than the U.S. Supreme Court) do not have jurisdiction to review state court cases.  The fact that Plaintiffs have pled this case as a civil rights case under 42 U.S.C. § 1983 does not change this fact.

The federal courts lack authority under the *Rooker-Feldman* doctrine to sit as a state appellate court to review state court determinations. See *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). This doctrine, "a combination of the abstention and *res judicata* doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). Only the United States Supreme Court has jurisdiction to correct state court judgments. Feldman, 460 U.S. at 482. The Supreme Court has reaffirmed that the *Rooker-Feldman* doctrine applies where a loser in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, invites the district court to review and reject that judgment. See *Exxon Mobile Corp. v. Sandia Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). On the question of whether abstention is appropriate under *Rooker-Feldman,* the crucial question is whether the "source of injury" upon which the plaintiff bases his federal claim is a state court judgment. See *Burton v. Kirby,* S.D. Ohio No. 1:17-cv-767, 2017 WL 5495698, at *7-8, citing *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine

would prevent the district court from asserting jurisdiction." *Lawrence*, supra at 368, quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)). Sixth Circuit panels have held that the *Rooker-Feldman* doctrine bars federal-court adjudication of claims where success on those claims would disturb or imply the invalidity of state-court rulings. *Evans v. Yarbrough*, Sixth Cir. No. 00-3588, 2000 U.S. App. LEXIS 33384, at *2; *Bodell v. McDonald*, 4 Fed. Appx. 276, 2001 WL 137557 (6th Cir. 2001); *Rowe v. City of Detroit*, Sixth Cir. No. 00-1353, 2000 U.S. App. LEXIS 28066.

The *Burton* case is particularly instructive here. In *Burton,* the plaintiff—the son of a decedent that died intestate—sued a state probate judge regarding his decision regarding the validity of the marriage of a decedent. In the federal lawsuit, the plaintiff alleged that the judge "created bias and prejudice which led to barriers" in the litigation and that he was "unfair, did not follow the law, and denied" motions without reason. Id. at *4. This Court determined that the plaintiff's claims were barred by the *Rooker-Feldman* doctrine because they were inextricably tied to the state court decision, even though the plaintiff's claims were couched as civil rights claims. Id. at *8. Thus, this Court held: "[a]ny review of the due process claim asserted by plaintiff in this context would require the Court to review the specific issues addressed in the state probate court proceedings. This Court lacks jurisdiction to review the state court proceedings or grant the relief plaintiff requests." Id. at *8-9.

Plaintiff Whitaker's claims are couched in the language of an Equal Protection claim under § 1983. But this artful pleading does not change the fact that Plaintiffs are asking this Court to intervene to review and overturn Judge Kirby's decision regarding the name change application. (Doc. 1, Complaint, PageID#20-21). The "source of injury" identified in Plaintiffs' Complaint is Judge Kirby's decision—alleging that Judge Kirby has violated Plaintiffs' rights

"[b]y not permitting transgender adolescents to use a name that fits their gender identity." (Doc.1, Complaint, PageID#19). Plaintiffs have made it clear that they are asking this Court to find that Judge Kirby acted contrary to the law in denying the Whitaker name change application, and to overturn this decision. Id. Any review by this Court of Plaintiffs' claims would be inextricably tied to the state court decision and would require that this Court review the specific issues addressed in the state court proceeding before Judge Kirby. This is precisely the type of invitation to federal courts to review state court decisions that the *Rooker-Feldman* doctrine dictates must be rejected. As such, Plaintiff Whitaker's claims must be dismissed based on lack of subject matter jurisdiction under *Rooker-Feldman*.

**B.** **The claims of Whitaker and Shaul Plaintiffs must be dismissed based on *Younger* abstention.**

The Whitaker and Shaul Plaintiffs are parties to pending state court proceedings, namely, proceedings to hear their name change applications under R.C. § 2717.01. Plaintiffs are asking this Court to interfere with those pending state proceedings—to reverse Judge Kirby's decision in the Whitaker case and to dictate the result of the Shaul application. As to these requests, Plaintiffs' Complaint is improper and should be dismissed based on *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See *Younger*, supra at 44-45. When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state Defendant files such a case, Younger abstention requires the federal court to defer to the state proceeding. Id; see also *Pennzoil Co. v. Texaco, Inc.*, 481 U.S.

1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44. In this case, all three factors for *Younger* abstention are present.

There is no dispute that as to the Whitaker and Shaul Plaintiffs, there are ongoing state proceedings. (Doc. 1, PageID 2, ¶¶ 3.b. and 4.b). The Whitaker matter is currently pending before the Twelfth District Court of Appeals. (Doc. 1, Complaint, PageID#2, ¶ 3.c.). The Shaul name change application is currently pending before the Warren County Probate Court. (Doc. 1, Complaint, PageID#2, ¶ 4).

Second, there is an important state interest at issue here. The Ohio General Assembly has vested the Probate Court with the discretion to determine under what circumstances a name change is appropriate. In the case of minors, the court must consider the best interest of the child in determining whether reasonable and proper cause exists when deciding whether to permit a name change. The determination of the scope and limit of that discretion is an important state interest, and this case places that discretion squarely at issue in this case. This Court could not decide this case without directly addressing this state interest.

Finally, the available state proceedings afford an adequate opportunity to raise federal questions. In the context of review a matter relative to a claim for *Younger* abstention, this Court has held that it must "presume that the state courts are able to protect the interests of a federal

11

plaintiff," absent a showing of a law or rule to the contrary. See *Miller v. Franklin County Children Services,* S.D. Ohio No. 2:15-cv-179, 2016 WL 279260, at *16. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979). The burden at this point rests on the Plaintiff to demonstrate that state procedural law bars presentation of his claims. *Pennzoil Co.*, 481 U.S. at 14. When a Plaintiff has not attempted to present his federal claims in the state court proceedings, the federal court should assume that state procedures will afford an adequate remedy, in the absence of "unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15. As to the Whitaker matter, there is nothing to prevent the Plaintiff from raising the federal constitutional issues before the Twelfth District Court of Appeals as an appellant, and Plaintiffs have not shown anything to the contrary. Likewise, the Shaul Plaintiffs may raise their constitutional arguments in the matter pending before the Warren County Probate Court if they so choose and can argue the same positions in an appeal to the Twelfth District Court of Appeals if necessary.

     **C.    Jane Doe Plaintiff lacks standing to bring a claim, as Jane Doe has not asserted facts showing a live case or controversy.**

As this Court is well aware, the jurisdiction of the federal courts is limited. Article III § 2 of the United States Constitution grants the federal courts jurisdiction only over specified "cases" or "controversies." Absent a live "case or controversy," a federal court has no subject matter jurisdiction and the case must be dismissed. This "case or controversy" requirement gives rise to the concept of standing. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Standing contains three elements. First, plaintiffs must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual

or imminent, not conjectural or hypothetical. *Lujan,* supra, at 560-61. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Id. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id. "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, supra, at 103-104.

As for the first consideration, a "threatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury are not sufficient." *Whitmore v. Ark.*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990). The Sixth Circuit has held that "the mere subjective fear that a plaintiff will be subjected again to an allegedly illegal action is not sufficient to confer standing." *Hange v. City of Mansfield, Ohio*, 257 F.App'x 887, 891 (6th Cir. 2007).

As to the second consideration, "a plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); see also *United States v. Ovalle*, 136 F.3d 1092, 1100-01 (6th Cir. 1998). The rare exception to this requirement arises where a plaintiff can "show that (1) it has suffered an injury in fact; (2) it has a close relationship to the third party; and (3) there is some hindrance to the third party's ability to protect his or her own interests." *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 404 (6th Cir. 1999). "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Lujan*, supra, at 561.

Plaintiff Jane Doe does not have standing to bring her claims in this case. The only facts alleged in the Complaint regarding this Plaintiff are that she is the parent of a transgender child who is planning on filing a name change application in Warren County, and she is "fearful that she and her child will be subjected to an unfair and unconstitutional refusal to consider the name change application." (Doc. # 1, PageID 3, ¶ 5.c.). There is no allegation that she has actually filed for the name change for her child, or that she has been prevented from applying for the name change through any means related to Judge Kirby. In fact, she has not alleged any communication with or connection to the Court. She simply states that she believes that Judge Kirby may deny the name change if it is made. These allegations are insufficient to support standing for Jane Doe, as there is no allegation of an injury in fact—and therefore no causal connection between the conduct of Judge Kirby and the non-existent injury in fact. The mere fact that Plaintiff Doe *believes* that a certain outcome will occur *if* she files for a name change for her child is too speculative to confer standing to sue.

Moreover, it is hard to conceptualize what relief Plaintiff Doe is asking this Court to provide. This Court can fairly ask Plaintiff Doe: What do you want this Court to do?

If the answer is that Plaintiff Doe wants this Court to pre-emptively block Judge Kirby from denying the name change application, this request slams head-first into a host of problems, not the least of which are the abstention issues detailed above, which hold that federal courts should not interfere with state proceedings. This includes shutting down or predetermining the outcome of state proceedings before they are even commenced.

If the answer is that Plaintiff Doe wants this Court to tell Judge Kirby that he cannot rule on the name change application at all, this is once again an end-run around the state proceedings available for this purpose. Plaintiff Doe should not be permitted to avoid these procedures by

filing in this Court, based merely on the allegation that Plaintiff Doe fears what may be the possible outcome if the name change application is filed.

Because Plaintiff Doe has failed to plead facts sufficient to show an actual case or controversy, Plaintiff Doe's claim should be dismissed as a matter of law.

> **D.** **Judge Kirby is entitled to absolute immunity from civil liability under 42 U.S.C. § 1983 for both money damages and declaratory judgment. To the extent that Plaintiffs seek money damages, such claims are barred by the Eleventh Amendment.**

Judges are afforded absolute immunity from § 1983 liability for acts they commit while functioning within their judicial capacity. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Pierson v. Ray*, 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). Judges retain absolute immunity from liability as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); see also *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). The decisions made by Judge Kirby in the state court action were functions normally performed by judges—specifically, deciding an application for name change under R.C. 2717.01. See *Stump*, 435 U.S. at 362. Plaintiffs have alleged no facts indicating that Judge Kirby acted "in the complete absence of all jurisdiction." *Stern*, 262 F.3d at 607. Therefore, Judge Kirby is absolutely immune from civil liability in this matter.

In addition, this immunity extends to declaratory judgment claims. The Sixth Circuit has held that where a judge was not an adversary of the plaintiff in the state court proceedings or an enforcer or administrator of a statute, but rather acted as a disinterested judicial adjudicator who

was bound to decide the issues before him, the judge is not amenable to a suit for declaratory relief under §1983 because no case or controversy exists between the plaintiff and the judge. See *Cooper v. Rapp*, 702 F. Appx 328, 333-34 (6th Cir. 2017); see, also, *Hertel v. Everett¸* S.D. Ohio No. 2:18-cv-179, 2018 U.S. Dist. LEXIS 138573, at *7 -8.  In this case, Judge Kirby was acting as a judicial adjudicator who was bound to decide the issue before him—namely, whether, under R.C. § 2717.01, it was in the best interest of the child to grant the name change application.  As such, Judge Kirby is entitled to judicial immunity from both money damages and from the declaratory judgment claims of Plaintiffs.

Finally, to the extent Plaintiffs have sued Judge Kirby for damages, their claims are also barred by Eleventh Amendment immunity. Plaintiffs have not designated whether their claims against Judge Kirby are in his official capacity or his individual capacity, which means that the Court must treat them as if they are official capacity claims.  *Pelfrey v. Chambers*, 43 F.3d 1034, 1037-38 (6th Cir. 1995).  An official capacity suit is treated as a suit against the governmental entity. *Ky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The Eleventh Amendment bars §1983 actions against a state and its officials sued in their official capacities for money damages. Id. at 169. Ohio common pleas and appellate courts are arms of the State of Ohio for purposes of the Eleventh Amendment analysis. See *Hertel, supra,* at *9, citing *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997). As such, any claims against Judge Kirby for damages are also barred by the Eleventh Amendment, in addition to the other applicable immunities discussed above.

E.     **Plaintiffs' Equal Protection claims fails as a matter of law, as the only categorical distinctions that Judge Kirby is alleged to have made are based on age (not sex), and Judge Kirby had a rational basis for his decision regarding name changes based on the age of the applicant.**

Plaintiffs' Complaint is filled with a ranging discussion of transgender issues and alleged sex discrimination. However, when one drills into the actual facts alleged in the Complaint, it becomes clear is that this case is not about sex discrimination. Rather, this case is about minors complaining that they are not being treated the same as adults. Age is not a protected class. See *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018). Thus, this Court would have to review Judge Kirby's decision based on the lowest level of scrutiny, requiring Judge Kirby to show only that his decisions about name change applications are rationally related to some legitimate governmental interest.

As a threshold matter, it should be noted that the standards applicable to name change applications are different for adults and minors. The standard for the review of an application for a name change by an adult is that the change should be granted if it is "reasonable and proper." See R.C. § 2717.01(A); *In re Willhite, supra*, at 4. The standard for a minor, however, is different. For a minor, a name change should be granted only if the Court finds that reasonable and proper cause exists and it is in the best interest of the child. Id. As such, the *law* treats minors and adults differently with respect to name change applications, and Judge Kirby has followed the law by applying those different standards.

To prevail on their Equal Protection claim, Plaintiffs would have to show that Judge Kirby treats transgender applicants differently than similarly situated non-transgender applicants. In the Complaint, Plaintiffs correctly state that there have been seven transgender name change applications granted in the past seven months, in Case Nos. 2018-9075, 2018-9059, 2018-9052, 2018-9026, 2018-9016 and 2018-9015, and Case No. 2018-9028. (Doc. #1, Page ID 16-17).

These cases involved six adults and one minor. Plaintiffs incorrectly state that the one minor name change application that was granted was done by a Magistrate, when in fact it was Judge Kirby who granted all six adult name change applications in 2018 and the one minor name change application in 2018. These facts show that Judge Kirby treats transgender people no differently than non-transgender people, as he has approved numerous transgender name change applications. In fact, what these facts *actually* show is that Judge Kirby applies a different standard for minors than he does with adults when it comes to name change applications, which is consistent with the law. It is clear from his written opinions that Judge Kirby believes that the step to change one's legal identity is an important and life-changing decision and that the motivations and depth of understanding of a minor making that decision deserve more scrutiny than the same decision made by a matured adult. Thus, to the extent that Judge Kirby is making categorical distinctions about this issue (or treating groups of people differently), the distinction he is drawing is between minors and adults, not transgender and non-transgender. This is a distinction based on the age of the applicant, not sex or gender identity of the applicant. The Supreme Court and the Sixth Circuit have held that age is not a suspect or intermediate class to which heightened scrutiny applies under the Equal Protection Clause. See *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976); *Theile v. Michigan*, 891 F.3d 240 (6th Cir. 2018); *Fabens v. USAir, Inc.*, 6th Cir. No. 95-3291, 1996 U.S. App. LEXIS 30333, at *5;

Age classifications are subject to rational-basis review. *Theile,* supra at 243. The rational basis standard places a heavy burden on the plaintiff to "show there is no rational basis" for the classification. Id. By the same token, a defendant "need not offer any rational basis so long as [a reviewing] court can conceive of one." *Ziss Bros. Constr. Co. v. City of Independence, Ohio*, 439

F. App'x 467, 476 (6th Cir. 2011), quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (2006).

While not entirely escaping discriminatory treatment, the aged "have not experienced a history of purposeful unequal treatment." *Murgia*, supra at 313. Age, therefore, is not a suspect classification, and "rationality is the proper standard by which to test" an age limitation under the Equal Protection Clause. Id. at 312. The Supreme Court has repeatedly reaffirmed the standard. See, e.g., *Vance v. Bradley*, 440 U.S. 93, 96-97, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979) (holding a statute survives review unless the classification "is so unrelated to…any…legitimate purpose[] that we can only conclude that the legislature's actions were irrational"); *Kimel v. Fla. Board of Regents*, 528 U.S. 62, 83, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) (finding age classifications "rationally related to a legitimate state interest" do not offend the Fourteenth Amendment).

The question here is whether Judge Kirby has articulated a reason for treating minors differently than adults with respect to name change applications that is rationally related to a legitimate state interest.

There can be no question that the state has a legitimate interest in ensuring that the decision to change one's legal identity is undertaken with due consideration of the lasting impact on the person whose identity will be changed.  It is for this reason that a name change can only occur with the approval of the Court, after judicial review.  In the Complaint, Plaintiffs indicate that they believe that judicial review for name changes is something of a formality—that the Court should simply rubber-stamp name change applications unless it is clear that the purpose of the name change is to perpetrate fraud.  The discretion given to the Court by statute is not so limited.  See R.C. § 2717.01.  As Judge Kirby stated in his opinion, "Changing a name through judicial decree implies an official consideration and a judicial endorsement of the new name." *In*

*re Wurgler,* 136 Ohio Misc. 2d 1, 2005-Ohio-7139, 844 N.E.2d 919. Thus, ensuring that a name change is appropriate and undertaken with due consideration is a legitimate governmental interest for the purposes of rational basis review.

In his written decision on the Whitaker case, Judge Kirby indicated that he was not convinced that the name change was in the best interest of the child, based on the age of the child and circumstances of the child's request. Specifically, Judge Kirby wrote:

> Adolescence is a time of fevered identity exploration. In addition, adolescents can become fixated on their immediate desires and far too often lack the ability to fully appreciate the long-term effects of their decisions. It is generally well-known and not seriously contested that adolescent minds and bodies don't fully develop during their minority and they are unable to cognitively and emotionally make adult-like decisions.
>
> Here the Court is faced with a request from a 15-year-old who lacks the age, maturity, knowledge, and stability to make this decision. Whether Heidi is experiencing Gender Dysphoria or is just not comfortable with her body is something that only time will reveal. Is Heidi's distress brought about by confusion, peer pressure, or other non-transgender issues -- or is it truly a mismatch between her gender identity and her body? Children change significantly and rapidly. A name change request today by a child could be motivated by short-term desires or beliefs that may change over the passage of time as the child matures. The Court recognizes the reality that Heidi's brain is still growing and changing, and is simply not ready to make this life-altering decision.

Whether or not one agrees with Judge Kirby's decision or the underlying reasoning for it, it cannot be denied that the reasoning is not "so unrelated to any legitimate purpose that we can only conclude that the legislature's actions were irrational." *Vance, supra* at 96-97. Judge Kirby plainly based the decision on the finding that in this case, the child was not sufficiently mature and well-informed to make the serious decision to change the child's name, which is rationally related to the legitimate government interest in ensuring that such decisions are made with due care and consideration. And it should be noted that Plaintiff presented absolutely no expert or medical testimony as to the best interests of the child, even though it has been inaccurately

alleged by Plaintiffs that such evidence was presented. (See Transcript attached to Plaintiffs complaint).

To the extent that Judge Kirby has made categorical distinctions regarding name change applications, the distinctions he has made are based on age, with a stricter view of name change application of transgender minors than the same request by transgender adults. The fact that the applicant is transgender is not the distinction driving his decision (as demonstrated by the information set forth in the Complaint). The driving force behind the decision is the age and maturity of the applicant. As a result, Judge Kirby must only show a rational basis for his decision, which is easily satisfied here based on the facts alleged in the Complaint.

**CONCLUSION**

For the reasons set forth herein, Defendant Judge Joseph Kirby respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6).

Respectfully submitted,

s/ *Aaron M. Glasgow*
J. Stephen Teetor     (0023355)
E-mail: jst@isaacwiles.com
LEAD COUNSEL
Aaron M. Glasgow    (0075466)
E-mail: aglasgow@isaacwiles.com
ISAAC WILES BURKHOLDER & TEETOR, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 220-5170 / P: (614) 365-9516
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2018, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

_/s/ Aaron M. Glasgow_ _____
Aaron M. Glasgow      (0075466)