UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE LEIGH WHITAKER, et al. | ) ) ) | CIVIL COMPLAINT |
| | ) | Case No. 1:18-cv-00540-WOB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JUDGE JOSEPH W. KIRBY, | ) ) | JUDGE WILLIAM O. BERTELSMAN |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant's motion to dismiss should be denied. The *Rooker-Feldman* doctrine does not apply to this case because Plaintiffs challenge Judge Kirby's practices and procedures, not his final judgments. *Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir. 1998) (*Rooker-Feldman* not bar claims challenging the "*procedures* used" by state court judges (emphasis in original)). Similarly, the Supreme Court limited application of *Younger* abstention almost exclusively to criminal and quasi-criminal proceedings in *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013), and Defendant's reliance on pre-*Sprint* case law is misplaced.

Defendant does not (and cannot) dispute that Plaintiffs Whitaker and Shaul have Article III standing—and Defendant has overlooked the Sixth Circuit's admonition in *Sch. Dist. v. Sec'y of the United States Dep't of Educ.*, that where one Plaintiff has standing, "there is no need to consider" whether any others do. 584 F.3d 253, 261 (6th Cir. 2009). In any event, Plaintiff Jane Doe does have standing, as she has alleged that she intends to file a name change application for her child, and her child therefore will be subject to

[ 1 ]

the discriminatory practices at issue. Additionally, Congress has abrogated judicial immunity for state court judges in actions for declaratory relief (rather than monetary damages), so the Court should not dismiss on that ground, either.

Lastly, Defendant—in what amounts to a motion to dismiss for failure to state a claim—contends that he does not discriminate against transgender people because he has granted name changes to transgender adults and select transgender minors in the past, before adopting the new, discriminatory procedures alleged in Plaintiffs' complaint. But in order to state a claim for unlawful discrimination, a plaintiff need not allege or prove that the defendant discriminated against all members of a protected class. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 720 (6th Cir. 2006). Just as it would violate equal protection for Defendant's procedures to treat girls under 18 less favorably than boys under 18 based on their sex—regardless of whether Defendant also discriminated against adult women or had treated a single girl equally in the past—so too it violates equal protection to treat transgender minors less favorably than other minors based on their transgender status. Further, both the Sixth Circuit and this Court have held that discrimination against transgender people is subject to heightened scrutiny, and Defendant has not even attempted to show that the challenged procedures satisfy that demanding standard. For these reasons, Defendant's motion to dismiss should be denied.

I. ARGUMENT.

    A. *Rooker-Feldman* Does Not Bar Plaintiffs' Claims.

Defendant complains that the present suit is an "end-run" around the state court system, and thus *Rooker-Feldman* should apply. Doc. 15, PAGEID #: 103. This misses the mark and "does not make *Rooker-Feldman* more or less applicable.". *Coles v. Granville*, 448 F.3d 853, 859 (6th Cir. 2006). Under settled law, the dispositive issue is whether the Complaint falls within the narrow confines of the *Rooker-Feldman* doctrine. As shown below, it does not.

The *Rooker-Feldman* doctrine is based on Congress vesting the United States Supreme Court with jurisdiction to review a final judgment of a state's highest courts, which by implication divests the lower federal courts of that jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). In the wake of *Exxon*, the Sixth Circuit "has tightened the scope of *Rooker-Feldman*." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010); *Coles*, 448 F.3d at 857 (6th Cir. 2006). "In post-*Exxon* analysis," the Sixth Circuit has "distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Id.* at 309.

Defendant's reliance on three pre-*Exxon* unpublished Sixth Circuit decisions is misplaced. Doc. 15, PageID #: 105. The Sixth Circuit has subsequently repudiated its prior standard that turned on whether a federal suit is "inextricably intertwined" with or somehow "tied" to the state court proceeding, or whether success on the federal claims would imply the invalidity of the state-court ruling. *Berry v. Schmitt*, 688 F.3d 290, 302 (6th Cir. 2012) ("In the wake of *Exxon*, this court has explicitly backed away

from that standard."). Under current law, as explained in *Exxon*, "[i]f a federal plaintiff present[s] some independent claim, *albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party* . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Fieger v. Ferry*, 471 F.3d 637, 642 (6th Cir. 2006) (citing *Exxon*, 544 U.S. at 293) (emphasis added). This case presents such an independent claim.

> 1. *This Action Challenges the Procedures Used by the Probate Court Judge, Not the Substance of the State Court Judgment.*

The Sixth Circuit has long recognized that while *Rooker-Feldman* prohibits federal review of state court judgments, it does not bar claims challenging the "*procedures* used" by state court judges. *Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir. 1998) (emphasis in original); *see also Alexander v. Rosen*, 804 F.3d 1203, 1206–07 (6th Cir. 2015) (*Rooker-Feldman* did not apply because plaintiff's injury did not "emerge from the state court *judgment*" but rather "the conduct of the individuals who happened to participate in that decision") (emphasis in original); *Marks v. Tennessee*, 554 F.3d 619, 623 (6th Cir. 2009) (plaintiff's claim that state court's refusal to indefinitely stay proceedings violated the Americans with Disabilities Act was not barred by *Rooker-Feldman*).

In *Catz*, the Sixth Circuit reversed a trial court holding that the plaintiff's claims were barred by *Rooker-Feldman* because they appeared to challenge the validity of the Arizona state court proceedings. *Catz*, 142 F.3d at 294 (6th Cir. 1998). The Sixth Circuit explained that the plaintiff "attack[ed] as unconstitutional 'the *manner* in which the Arizona state court proceeding was conducted,'" not the Arizona state court's decision

on the merits. *Id.* (internal quotation marks omitted).   The Sixth Circuit also recognized that the relief sought "would not consist of a conflicting judgment on the merits."  *Id.*

Just as in *Catz*, the Complaint in this case attacks the *procedures* used in Judge Kirby's courtroom, which single out transgender minors and subject them to disparate treatment:

- "Judge Kirby has instructed that all name change applications from transgender persons be assigned to his docket for a hearing," rather than being heard by a magistrate judge (as is the case for all other applicants).  Doc. 1, PAGEID #: 17, ¶ 35(a).

- Judge Kirby engages in intrusive, embarrassing, atypical, and irrelevant questioning of transgender minors and their parents during name change hearings.  Doc. 1, PAGEID #: 12–13, ¶¶ 26(e) & 26(f), and PAGEID #: 18, ¶ 36.

- Judge Kirby requests evidence from medical professionals in cases involving transgender minors when he does not require such evidence from non-transgender minors.  Doc. 1, PAGEID #: 18, ¶ 36(a).

- Judge Kirby copies and pastes his decisions regarding transgender minors, rather than engaging in individualized determinations.  Doc. 1, PAGEID #: 15, ¶ 33; PAGEID #: 18, ¶ 36(b); PAGEID #: 51, 54–55, 59 (three decisions from Judge Kirby using identical language and format).

- Transgender minors, upon having their applications for name changes denied, are prohibited from bringing further applications until they are adults (unlike other applicants).  Doc. 1, PAGEID #: 13, ¶ 27; PAGEID #: 51, 54–55, 59.

Whitaker alleges that, because of her child's transgender identity, her child's case was heard by Defendant rather than (as would normally be the case) by a magistrate, her child was subjected to a barrage of intrusive and embarrassing questions, she was denied the opportunity to be heard by an impartial decisionmaker who would listen to

the evidence and render an individualized determination, and she was barred from bringing further name change applications for her child, just as the plaintiff in *Catz* was prohibited from filing further suits. Thus, under *Catz*, *Alexander*, and *Marks*, Whitaker's challenges to the practices and procedures used by Judge Kirby are not subject to *Rooker-Feldman*.

      B.      <u>The *Younger* Abstention Doctrine Does Not Bar Plaintiffs' Claims.</u>

This case does not fall within the narrow category of state law proceedings to which the *Younger* abstention doctrine applies. *New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350 (1989). The Supreme Court has cautioned that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368. In *Sprint Communications, Inc. v. Jacobs*, the Court clarified that those "exceptional circumstances" exist in only "three types of proceedings":

> ongoing state criminal prosecutions; certain "civil enforcement proceedings"; and pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

571 U.S. at 78 (ellipses in original).

This case does not fall within any of these three "exceptional" categories; accordingly, the *Younger* abstention doctrine does not apply.

Defendant's *Younger* abstention analysis disregards this binding precedent and relies instead on the three factors in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, namely whether, "(1) the state proceedings [were] currently pending; (2) the

[ 6 ]

proceedings involve[d] an important state interest; and (3) the state proceedings w[ould] provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." 457 U.S. 423 (1982). As the Supreme Court noted in *Sprint*, "[d]ivorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." 571 U.S. at 81. That result is "irreconcilable with our *dominant* instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Id.* at 82 (emphasis in original) (citing *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984)). For this reason, the Sixth Circuit has held that the "*Middlesex* factors are only considered by a court after the court decides that one of the *NOPSI* exceptional circumstances is present." *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017) (citing *Sprint*, 134 S. Ct. at 593–94); *see also FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 290 (6th Cir. 2018). Because this case does not fall within any of these "exceptional circumstances," the *Middlesex* factors do not apply; moreover, even if they did, they would not be satisfied here

> 1. *A Civil Name-Change Proceeding Is Not Quasi-Criminal or Uniquely Important to State Courts' Ability to Perform Their Judicial Functions.*

This case does not fall within any of the three "exceptional" categories that trigger the *Younger* abstention doctrine. *NOPSI*, 491 U.S. at 368.

First, a civil name change proceeding is not criminal in nature. Second, a civil name change proceeding is not a civil enforcement proceeding, which must be quasi-

[ 7 ]

criminal in nature to trigger *Younger* abstention. *Sprint*, 571 U.S. at 81; *Doe*, 860 F.3d at 369. Unlike proceedings akin to a criminal prosecution, civil name change proceedings must be initiated by the person seeking the name change, or on his or her behalf, and are not in any way intended to sanction the individual seeking a name change. *See Doe*, 860 F.3d at 369 (quoting *Sprint*, 571 U.S. at 79). They cannot, therefore, constitute quasi-criminal civil enforcement actions precluded by *Younger*.

Finally, name change actions do not constitute "proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368. The Supreme Court has held that these "certain orders" include civil contempt orders and the requirement for posting bond pending appeal. *Id*. The common thread between these examples is that both implicate the ability of state courts to enforce their orders and judgments. The proceedings at issue in this case do not share these attributes. Unlike a contempt order or the requirement to post bond, scrutiny of the discriminatory procedures applied to transgender minors petitioning for name changes, and the potential for forward-looking relief to correct constitutional deficiencies in those procedures in future cases, does not interfere with the ability of state courts to enforce their judgments in any way.

        2.      *The* Middlesex *Factors are Not Satisfied.*

Even if civil name change proceedings *did* fall into one of the three *NOPSI* categories (which they do not), *Younger* abstention would not be justified because the three *Middlesex* factors also are not satisfied. For Plaintiff Doe, not even the first requirement is satisfied, because there is no pending state court proceeding that could

[ 8 ]

warrant abstention.  As to the other two Plaintiffs, the second and third *Middlesex* factors remain unsatisfied.

This case also does not involve the type of "important state interest" contemplated by *Middlesex*. For example the Sixth Circuit has found an important state interest in "providing for the general safety, health and welfare of its citizens." *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 641 (6th Cir. 1990). Here, the name change procedure exists primarily to facilitate individual and parental autonomy; the state's only significant interest is protecting the public against fraud or name changes sought for a similarly unreasonable or improper purpose.  *See* RC 2017.01(B)-(C).  Those interests are not implicated here, where Plaintiffs are seeking equal treatment of name change applications for their own minor children with full parental consent.

Lastly, Plaintiffs have no adequate means of asserting their constitutional claims within the Ohio state court proceedings.  This action challenges Defendant's practices and procedures about name change applications for transgender minors—a claim that necessarily implicates Defendant's treatment of transgender applicants generally, not only in a single case.  By contrast, Plaintiff Whitaker's appeal to the Twelfth District Court of Appeals will be limited to the record in the trial court and will focus on legal and factual errors committed by Judge Kirby with respect to her child's particular case.  There will be no opportunity in that court for Plaintiff Whitaker to obtain and present evidence of Defendant's practice of discriminating against transgender minors across a range of cases.  Unlike the state court appeal, this suit does not attack the ultimate *conclusions* Judge Kirby reached (*i.e.* substance), but rather the constitutionality of the

[ 9 ]

*procedures* he utilizes. Plaintiffs will have the opportunity to prove those general practices only in this suit. Therefore, even if the *Middlesex* factors were to apply to this case (which they do not), those factors would weigh against *Younger* abstention.

    C.    <u>Article III's "Case or Controversy" Requirement is Satisfied.</u>

The jurisdiction of the federal courts is limited by Article III § 2 of the United States Constitution to complaints alleging a live "case or controversy." To meet that test and establish standing, a plaintiff must allege an injury in fact, which the Supreme Court has defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). A plaintiff must further allege a causal connection between the injury and the defendant's conduct and that a favorable decision will redress the injury. *Id.* at 560–61. Defendant concedes that Plaintiffs Whitaker and Shane have standing, but argues that Plaintiff Jane Doe lacks standing. He is incorrect. Under well-established principles, Plaintiff Doe has standing.

        1.    *Plaintiff Jane Doe Has Standing Because She Has Concrete Plans to File a Name-Change Application for Her Minor Child.*

Plaintiff Jane Doe has standing under the traditional three-element *Lujan* test. *First*, Plaintiffs have alleged that Jane Doe "is planning to file a petition in Warren County Probate-Juvenile Court for a name change" and that, when she does so, she and her child will be subject to the unconstitutional practices and procedures challenged in this action. Doc. 1, PAGEID #: 3, at ¶ 5(c). Plaintiff's Doe's allegation of a concrete

[ 10 ]

plan to take action that will subject her to Defendant's unlawful conduct is precisely what is required to establish imminent injury sufficient to support standing. *See, e.g., Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014); *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015); *Planned Parenthood Sw. Ohio Region v. DeWine*, 64 F. Supp. 3d 1060, 1065 (S.D. Ohio 2014).

In addition, as stated in the Complaint, one of the purposes for seeking a name change for John Doe is to allow him to apply to colleges this fall using his correct name instead of his birth name. Doc. 1, PAGEID #: 15, at ¶ 30(c). This demonstrates that John Doe will experience a concrete and particularized harm if Defendant's discriminatory conduct is permitted to continue. Those allegations—which must be liberally construed and accepted as true at this stage, *see Lujan*, 504 U.S. at 561—are more than sufficient to allege an injury in fact.

*Second*, Defendant does not seriously contest that Jane Doe's injury is fairly traceable to the disparate procedures employed by Defendant when hearing name-change applications on behalf of transgender minors. By alleging a pattern or practice of discrimination by Defendant threatening her with imminent injury, Plaintiff Doe has adequately alleged that her injury is traceable to Defendant's conduct.

*Third*, Defendant concedes that Plaintiff Doe's injury is redressable by an order of this Court, although Defendant (incorrectly) assumes that Plaintiffs desire an order specifically directing Judge Kirby to grant John Doe's name change. In fact, Plaintiffs seek nothing more than an order that will ensure Judge Kirby treats transgender name

[ 11 ]

change applicants no differently than other similarly-situated applicants. Such an order would prevent Plaintiff Jane Doe's subjection to the unconstitutional procedures that are the subject of this action.

        2.    *The Court Need Not Reach the Issue of Plaintiff Jane Doe's Standing.*

In any event, it is well established that the Court need not reach the question of Plaintiff Jane Doe's standing so long as at least one other Plaintiff shows standing. *Sch. Dist. v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 261 (6th Cir. 2009) ("Since at least one Plaintiff in this action has standing, there is no need to consider whether the education association Plaintiffs also have standing.") (citing *Clinton v. City of N.Y.*, 524 U.S. 417, 431 (1998)); *see also Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (similar).

Defendant does not challenge that Plaintiffs Whitaker and Shaul have demonstrated standing, and to do so would be futile. Plaintiff Whitaker has already suffered a concrete, redressable injury traceable to Defendant's conduct, namely her child's subjection to Defendant's disparate treatment of transgender minors, and Plaintiff Shaul's injury is imminent in light of her child's pending name-change application. The suit could therefore proceed even if Plaintiff Doe lacked standing to sue independently—which she does not.

    D.    <u>Congress Has Abrogated Judicial Immunity for § 1983 Declaratory Relief.</u>

"The Sixth Circuit has explicitly recognized the availability of declaratory relief against judicial officers for claims under Section 1983." *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 765 (M.D. Tenn. 2016) (citing *Ward v. City of Norwalk*, No.

15-3018, 640 Fed. Appx. 462 (6th Cir. Feb. 3, 2016)). In *Ward*, the Sixth Circuit explained that, after § 1983 was amended in 1996 by the Federal Courts Improvement Act, the "the plain language of § 1983 contemplates a declaratory judgment against judicial officers . . . in their official capacities." *Ward*, 640 F. App'x at 467. Defendant's citations to pre-1996 case law (along with a handful of cases relating to suits for monetary damages) are thus unavailing.

Defendant's citation to *Cooper v. Rapp* confuses the doctrine of judicial immunity with Article III standing. 702 F. App'x 328, 333 (6th Cir. 2017). In *Cooper*, the Sixth Circuit explained that although declaratory relief is available as a remedy against state court judges, "abstention doctrines and Article III of the United States Constitution still serve to limit the availability of such relief." *Id.* at 333. As demonstrated above, neither abstention doctrines nor Article III standing preclude declaratory relief in this case.

> E. <u>Plaintiffs Have Stated Valid Equal Protection Claims Based on Discrimination Against Transgender People.</u>

Defendant's final argument is in effect a motion to dismiss for failure to state a claim under Rule 12(b)(6), relying on the allegations in the Complaint and on public records. *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). "To survive a motion to dismiss, the plaintiff need only plead sufficient factual matter, which we must accept as true, to 'state a claim to relief that is plausible on its face' meaning that we can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must construe the complaint in the light most favorable to the plaintiff and accept all

[ 13 ]

allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). Defendant's motion should be denied because Plaintiffs allege valid equal protection claims.

1. *Transgender People are a Protected Class.*

To state a claim for discrimination under the Equal Protection Clause, the Plaintiffs need only allege sufficient facts to show that Judge Kirby's "policies intentionally discriminated against [them] because of [their] membership in a protected class." *Starr v. Bova*, No. 1:15 CV 126, 2015 U.S. Dist. LEXIS 88683, at *4 (N.D. Ohio July 8, 2015) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). Transgender people "constitute an 'identifiable group' for equal protection purposes." *Starr*, 2015 U.S. Dist. LEXIS 88683, at *4 (citing *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012)).

Plaintiffs allege that they are members of a protected group, and that policies discriminating against them are subject to heightened scrutiny. Discrimination against transgender people warrants heightened scrutiny for two reasons. First, as the Sixth Circuit has held, discrimination against a transgender person is discrimination based on sex. *Equal Employment Opportunity Comm. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 574-581 (6th Cir. 2018) (holding that discrimination against transgender employees constitutes sex discrimination and that transgender people are a protected class under Title VII); *see also Smith v. City of Salem,* 378 F.3d 566 (6th Cir. 2004) (holding that government discrimination against a transgender person is sex discrimination for purposes of equal protection review); *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (same). Under settled law, discrimination based on sex warrants heightened

[ 14 ]

equal protection scrutiny. *United States v. Virginia*, 518 U.S. 515, 531 (1996); *Communities for Equity v. Mich. Athletic High School Ass'n*, 459 F.3d 676, 692-93 (6th Cir. 2006).

In addition, transgender people also independently meet the criteria for heightened scrutiny under the Supreme Court's traditional test, which considers: "(1) whether the class has been historically 'subjected to discrimination,'; (2) whether the class has a defining characteristic that 'frequently bears no relation to ability to perform or contribute to society,'; (3) whether the class exhibits 'obvious, immutable, or distinguishing characteristics that define them as a discrete group,'; and (4) whether the class is 'a minority or politically powerless.'" *Bd. of Educ. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016) (citations omitted).

This Court and others have held that transgender people, under this four-factor test, are a suspect class requiring "heightened scrutiny":

> First, there is not much doubt that transgender people have historically been subject to discrimination including in education, employment, housing, and access to healthcare. *Adkins*, 143 F. Supp. 3d at 139. Second, there is obviously no relationship between transgender status and the ability to contribute to society. Third, transgender people have "immutable [and] distinguishing characteristics that define them as a discrete group," *Lyng*, 477 U.S. at 638, or as the Second Circuit put it in *Windsor*, "the characteristic of the class calls down discrimination when it is manifest," 699 F.3d at 183; *see also Adkins*, 143 F. Supp. 3d at 139–40 (noting that transgender people encounter obstacles when there is a mismatch between the sex indicated on a birth certificate and the person's gender identity, and that "transgender people often face backlash in everyday life when their status is discovered"). Finally, as a tiny minority of the population, whose members are stigmatized for their gender non-conformity in a variety of settings, transgender people are a politically powerless minority group. The efforts of states to pass legislation requiring individuals to use sex-segregated bathrooms that correspond with their birth sex are but one example of the relative political powerlessness of this group. *See Carcaño*, 2016 U.S. Dist. LEXIS 114605,

> 2016 WL 4508192, at *6–7 (describing the enactment of North Carolina's "bathroom bill"); *see also Adkins*, 143 F. Supp. 3d at 140 (noting that there are no openly transgender members of the United States Congress or the federal judiciary). Therefore, even if *Smith* did not require that this Court apply heightened scrutiny to Jane's equal-protection claim, the Court finds that heightened scrutiny is appropriate under the four-factor test to determine suspect and quasi-suspect classifications.

*Id.* at 874; *see also Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017) (holding that discrimination because of a person's transgender status warrants heightened scrutiny); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 873-74 (S.D. Ohio 2016) (same); *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139-40 (S.D.N.Y. 2015) (same); *Norsworthy v. Beard,* 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) (same); *Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017) (same); *Doe 1 v. Trump*, 275 F. Supp. 3d 167 (D.D.C. 2017) (same); *Karnoski v. Trump*, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017) (same); *Stockman v. Trump*, No. EDCV 17-1799 JGB (KKx) (C.D. Cal. Dec. 22, 2017) (same).

Under heightened scrutiny, a government policy must be "substantially related to a sufficiently important governmental interest" to survive constitutional review. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441, 105 (1985). "The burden of justification is demanding and it rests entirely on the State." *Virginia,* 518 U.S. at 513. Defendant has not argued that his differential treatment of transgender minors is substantially related to an important government interest. Thus, the only point left to consider is whether Plaintiffs have pled facts sufficient to plausibly allege that Judge Kirby discriminates against transgender people. They have more than adequately done so.

[ 16 ]

    2.  *Plaintiffs Have Adequately Alleged That Judge Kirby's Practices And Procedures Discriminate Against Transgender Minors.*

  Defendant concedes that "[t]o prevail on their Equal Protection claim, Plaintiffs would have to show that Judge Kirby treats transgender applicants differently than similarly situated non-transgender applicants." Doc. 15, PAGEID #: 113.

  Plaintiffs have alleged in detail that Judge Kirby discriminates against transgender applicants by utilizing an unconstitutional process and procedure that treats the name change applications of transgender minors differently and less favorably than those of other minors. Specifically, Plaintiffs have alleged that Judge Kirby: assigns all transgender minor name change cases to himself rather than to magistrate judges; subjects transgender minors to embarrassing, unusual, and intrusive questioning of a personal nature; asks for medical evidence to be presented; and issues "copy and paste" decisions denying their petitions.

  By contrast, other minors—that is, "similarly situated" non-transgender applicants—generally have their petitions heard by magistrate judges, are not subject to intrusive, unusual, and embarrassing questions, are not asked to present medical evidence, and obtain a judgment based on an individualized determination of their request. Construing the Complaint in the light most favorable to Plaintiffs, the allegations are sufficient to allow for a reasonable inference that Judge Kirby discriminates against minors because of their transgender status.

  Defendant's contention that his court has granted name change applications by transgender adults and minors in the past does not excuse his current pattern and

[ 17 ]

practice of unequal treatment of the Plaintiffs and other transgender minors. Doc. 15, PAGEID #: 100. It is well established that an individual "does not have to discriminate against all members of a class to illegally discriminate against a given member of that class." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 720 (6th Cir. 2006) (quoting *Goosby v. Johnson & Johnson Med.*, Inc., 228 F.3d 313, 323 (3d Cir. 2000)) (holding that white police officers could maintain race discrimination claim if they could prove that promotion decisions were made based on race, even if the majority of individuals promoted were white). A policy or practice that discriminates against *some* people because they are transgender is no less unlawful than a policy or practice that discriminates against *all* transgender people. Moreover, an instance of treating a member of a particular group equally in the past does not affect the validity of an equal protection claim alleging a current pattern and practice of unequal treatment of the group.

   Plaintiffs have alleged that the Defendant provides non-transgender minors with a normal judicial process and routinely grants their applications or, if a petition is denied, permits them to reapply while they are minors, but subjects transgender minors to a barrage of unusual procedural barriers, issues cut and paste opinions denying their petitions, and bars them from reapplying until adulthood. Therefore, Plaintiffs have sufficiently pled that Defendant's practices violate equal protection by discriminating against transgender minors based on their sex and transgender status, and Defendant's motion to dismiss for failure to state a claim should be denied.

[ 18 ]

## II. CONCLUSION.

For the above reasons, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss.

Respectfully Submitted,

Dated: September 10, 2018

/s/ Joshua R Langdon
Joshua R. Langdon, Ohio Bar #90956
Josh Langdon, LLC
810 Sycamore Street, Fl. 2
Cincinnati, Ohio 45202
Phone: (513) 246-1400
Fax: (513) 263-9000
E-mail: josh@joshlangdon.com

Shannon Minter*
Christopher Stoll*
Asaf Orr*
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Phone: (415) 392-6257
Fax: (415) 392-8442
sminter@nclrights.org
cstoll@nclrights.org
aorr@nclrights.org

Attorneys for Plaintiffs
* *pro hac vice* pending

## CERTIFICATE OF SERVICE

I, Joshua Langdon, Esq., do hereby certify that on this 10th day of September, 2018, I caused true and correct copies of the foregoing to be filed via the Court's CM/ECF system, causing service on all counsel of record.

/s/ Joshua R Langdon