**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE LEIGH WHITAKER, et al.** | : | **Case No. 1:18-cv-00540-WOB** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Judge William O. Bertelsman** |
| **v.** | : | |
| | : | |
| **JUDGE JOSEPH W. KIRBY,** | : | |
| | : | |
| **Defendant.** | : | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

The independence of our judiciary is an important part of our society. Any time that a judge—whether state or federal—is asked to exercise its judgment in a particular case, that judge runs the risk of the losing party being critical or disagreeing with that decision. However, judges must be free to exercise their honest judgment, even if wrong, without the threat of being sued by losing litigants or outside parties that disagree with the judgment. That is what courts of appeal are for.

Here, Plaintiffs have done everything that they can to avoid using the normal procedures afforded to them to seek the relief they seek.

As to Plaintiff Whitaker, despite the fact that there is a pending appeal to the state court of appeals, Plaintiffs are seeking an expedited ruling from this Court to overrule Judge Kirby's decision—the very relief they seek through the court of appeals. The only reasonable conclusion is that Plaintiffs do not believe that they will get a favorable ruling on their appeal from the court of appeals and would rather take their chances here in federal court. There is no jurisdiction for this Court to hear this type of ill-conceived effort under *Rooker-Feldman*.

Likewise, as to Plaintiffs Shaul and Doe, Plaintiffs have chosen to short-circuit not only the appellate process, but also the hearing process (and even the process of actually asking for relief, in Doe's case). Given that they have not had a hearing or obtained a decision from Judge Kirby, these Plaintiffs can only speculate as to whether they would obtain the name changes that they seek. Their subjective fear that Judge Kirby might deny them the requested name change is not sufficient to confer standing in this case.

In the end, Plaintiffs are seeking to avoid altogether any decision-making by the state courts in which the Ohio Revised Code specifically vests jurisdiction to hear and decide on the relief that they seek. Instead, Plaintiffs have simply filed a lawsuit in the Court they think most likely to give them what they want. That is not how the system works.[1] As such, Plaintiffs' Complaint should be dismissed on the pleadings.

1.      **The *Rooker-Feldman* doctrine applies in this case, as Plaintiffs are asking this Court to act as an appellate court to review the decision made by Judge Kirby regarding Plaintiff Whitaker.**

*Rooker-Feldman* bars the claims asserted by Plaintiff Stephanie Whitaker. *Rooker-Feldman* prevents a federal court from assuming appellate jurisdiction to review the decision of a state court. Ms. Whitaker's claims in this case are based squarely on a decision of a state trial court that is now on appeal and pending before the Ohio Twelfth District Court of Appeals. However, by filing this lawsuit and seeking a quick decision from this Court, Ms. Whitaker seeks to avoid the process which is available to a party who does not like the decision of a state trial court, which is to appeal to the state court of appeals. Despite now claiming that her claims are merely challenging Judge Kirby's procedures, the fact remains that the relief sought by Ms.

---

[1] And in the process, Plaintiffs have also unfairly continuously attacked the integrity of Judge Kirby in this case and in the media. As a member of the bench, Judge Kirby has properly refrained from responding publicly to these attacks. That is to his credit.

Whitaker is for this Court to overturn Judge Kirby's denial of her child's name change application. It is exactly this type of interference—and invitation to sit as a federal court of appeals over state court decisions—that *Rooker-Feldman* seeks to avoid.

Despite their lengthy discussion of *Rooker-Feldman,* Plaintiffs ignore the Sixth Circuit's most recent *Rooker-Feldman* decision in *Brent v. Wayne County Dept. of Human Services,* Sixth Cir. No. 17-1428/1811, 2018 U.S. App. LEXIS 23777, which was issued less than one month ago. *Brent* is directly applicable to this case and supports the dismissal of Plaintiff Whitaker's claims based on *Rooker-Feldman*.

In *Brent,* plaintiffs were the parents of children who were removed from their home pursuant to an order approved by the juvenile court. The order, however, was never reviewed personally by the judge, and the signature on the order was a literal rubber stamp by a probation officer, with the judge's permission. In their subsequent civil rights complaint challenging the order, plaintiffs argued that the court's policy of allowing probation officers to "rubber stamp" removal orders without personally reviewing the application for the order was a violation of their civil rights. Id. at *2-3. The District Court dismissed the challenge based on *Rooker-Feldman.* On appeal, the plaintiffs argued—like the Plaintiffs argue here—that *Rooker-Feldman* did not apply because the challenge was to a *policy*, not to the substance of the decision of the court. Affirming the District Court's dismissal of the Complaint, the Sixth Circuit held:

> Where…an allegedly unlawful policy is inextricably intertwined with a state-court order, we have previously differentiated between claims challenging the policy going forward and claims challenging the policy as applied in the past.*** [W]hile the *Rooker-Feldman* doctrine does not bar a plaintiff from attempting to 'clear away' an allegedly unconstitutional state-law policy going forward, *it does prevent a plaintiff from seeking "relief against the discipline imposed upon him" by application of an allegedly unlawful policy in the past.*** Here…(plaintiff] does not wish merely to 'clear away' Judge Smith's allegedly unlawful policy for future cases, but instead wants this court to hold that Judge Smith's application of her policy to the child-removal order entered against him was unconstitutional.

3

This is precisely the sort of 'specific grievance over specific decisions' that the *Rooker-Feldman* doctrine intended to bar in the lower federal courts.

Id. at *22-23.

In this case, the claims asserted by Ms. Whitaker suffer from the same defect as those in *Brent*. Here, Plaintiff Whitaker cannot be complaining about how Judge Kirby's procedures may be applied to her in the future. She is complaining about how the procedures were applied to her in the past, and based on those complaints, Ms. Whitaker is seeking an order from this Court invalidating Judge Kirby's decision based on the application of those procedures. Thus, Ms. Whitaker's complaints about Judge Kirby's procedures are inextricably intertwined with his state court order denying the name change application for her child. Likewise, it cannot be disputed that Ms. Whitaker has asserted a "specific grievance over a specific decision" issued by Judge Kirby, and this type of challenge is prohibited by *Rooker-Feldman*. Id. In the end, Plaintiff Whitaker cannot avoid *Rooker-Feldman* by simply reciting that her challenge is to a procedure, when it is clear from the Complaint that the challenge is really to the decision which was the product of the application of those procedures. The review of the procedures and the review of the decision are so intertwined that they cannot be separated for the purpose of *Rooker-Feldman*.

It should be noted that this is precisely the type of case against which *Rooker-Feldman* guards. Ms. Whitaker has a clear right to appeal Judge Kirby's decision—and has done so. However, because Ms. Whitaker and her counsel do not believe that the state court of appeals will rule in their favor and/or because they believe the court of appeals will move too slowly, they have filed in this Court to supplant the court of appeals. This is improper. Allowing this type of case to move forward would invite losing parties in state trial courts to forum shop between the federal court and the state court of appeals. Likewise, this type of case risks

conflicting decisions between state and federal courts based on the same set of facts. Such is the danger in allowing a case like this one to go forward.

Based on the above, Defendant requests that this Court dismiss Plaintiff Whitaker's claims based on the *Rooker-Feldman* doctrine.

**2.    The alleged improper "practices" and "procedures" do not state a claim for a constitutional violation.**

Because Plaintiffs have now shifted their argument toward challenging the *procedures* used by Judge Kirby (as opposed to his substantive decision), Plaintiffs' claims are subject to dismissal under Rule 12(b)(6) if the procedures about which they complain, even if true, are not sufficient to state a claim under 42 U.S.C. § 1983. In fact, none of the procedures complained of by Plaintiffs are sufficient to support a constitutional violation.

**a.    Judge Kirby has the discretion to decide which case he will hear personally.**

Plaintiffs' first contention is that Judge Kirby violated their constitutional rights because he hears name change applications from transgender minor cases personally and does not permit his appointed magistrate to hear those cases.

On this issue, Plaintiffs are simply wrong. Defendant has submitted multiple decisions made by a Warren County magistrate in transgender minor name change cases. Simply, Judge Kirby does not have the procedure of which he is accused by Plaintiffs.

However, even if Judge Kirby had a hard and fast rule that only he hears transgender minor name change applications, this "procedure" would not be sufficient to support a constitutional claim against Judge Kirby.

Under R.C. § 2717.01(A)(1), county probate judges have duty and authority to hear name change cases. Per R.C. § 2101.01(A), probate judges also may appoint magistrates to assist them as needed in handling their dockets. Under Ohio Civ. R. 53, probate judges like Judge Kirby

have the discretion to refer—or keep—cases within their jurisdiction as they see fit. See *In re Trust Created by Item III of the Will of Zmuda,* 6th Dist. No. L-96-073, 1997 Ohio App. LEXIS 1203, at *12-13 ("With regard to [a] probate court's decision to rule on the motion itself, it is well-settled that a trial court has the inherent power to control its own docket and the progress of proceedings in its court."). The fact that Judge Kirby chooses to personally hear certain cases is not evidence of some unconstitutional practice. It is a valid exercise of his statutory authority to order his docket as he sees fit. This includes reserving cases that he perceives as difficult or complex. Plaintiffs cannot realistically contend that name change applications from transgender minors do not present different and more complex issues for resolution than, say, a name change application for a child who is being adopted. For instance, in their Complaint, Plaintiffs spend five full pages explaining the complexities of gender dysphoria and gender identity issues. And a separate organization has attempted to file a lengthy brief to explain the transgender-related issues in this case. Under these circumstances, Judge Kirby cannot be faulted for choosing to personally hear name change petitions instead of "punting" the issue to a magistrate. This is particularly true where in the past, Judge Kirby disagreed with a magistrate's ruling denying a transgender minor name change application, compelling him to *overrule* the magistrate and grant the name change application personally. (Doc. #15-2, PageID 120-124). Simply put, Judge Kirby is permitted to hear whichever cases he chooses to hear personally, and his decision to personally hear sensitive cases involving more complex issues like transgender issues does not come close to establishing a constitutional violation.

b. **Judge Kirby has the discretion to inquire of any area that he deems relevant to the determination of whether the requested relief is in the best interests of the child.**

Plaintiffs also complain that Judge Kirby has engaged in an unconstitutional procedure

because he asked Plaintiff Whitaker's child questions which Plaintiffs deem "intrusive, embarrassing, atypical and irrelevant" and asked questions about "evidence from medical professionals." This argument fails for several reasons.

First, Judge Kirby has the discretion to ask whatever questions and seek whatever information is necessary to determine whether the applicant is entitled to a name change. The standard for review of a name change for a minor is "best interests" of the child, which is a very broad standard. *In re Willhite*, 85 Ohio St. 3d 28 (1999). In *Willhite,* in addition to listing certain specific factors that a court should consider in determining what is in the best interest of the child relative to a name change, the Court also stated that the Court may consider "*any other factor* relevant to the child's best interest." Id. As such, a probate judge has considerable latitude in what it may consider in determining best interest. In Ms. Whitaker's case and any other that come before him, Judge Kirby has wide discretion to determine what is in the best interests of the child, which requires a case-by-case determination based on the facts unique to each case. *Hayman v. Hayman,* 12th Dist. No. CA2001-10-250, 268, 2003-Ohio-76, at ¶ 44 ("A trial judge has wide latitude in considering all the evidence before it, and such a decision must not be reversed absent an abuse of discretion.") In making this best interest determination, Judge Kirby is entitled to inquire into whatever areas he feels are probative, even if those questions appear intrusive or even irrelevant to the applicant. The mere fact that *Plaintiffs* do not believe that the information sought by Judge Kirby is relevant to determining what is in the best interest of the child does not mean that Judge Kirby has engaged in an unconstitutional conduct by asking those questions. If this were the case, the decisions of many a state trial court judge would indeed be vulnerable to attack.

     **c.**     **Judge Kirby did not require medical evidence from name change applicant, and even if he did, this would be a valid exercise of his discretion to determine the best interest of the child.**

Regarding their claim that Judge Kirby requires medical information related to name change applications by transgender applicants, Plaintiffs are both factually wrong and inaccurate regarding the law.

Factually, there is no indication in the pleadings or attached exhibits that Judge Kirby *required* medical evidence to be presented to approve the name change application, or that he denied the name change application because of a lack of medical evidence. During the hearing, there was some conversation about the medical aspect of the minor's transition, as Ms. Whitaker indicated early in the hearing that the minor was diagnosed with gender dysphoria, which was the reason for the name change request. (Doc. #1, Complaint, PageID 28). The discussion resulted from Ms. Whitaker's indication that the name change process was related to the diagnosis. Nowhere in the record or in the subsequent decision did Judge Kirby rely on medical evidence (or lack of medical evidence) as a reason for denying the name change application.

In their Memorandum, Plaintiffs argue that Judge Kirby does not require medical evidence from non-transgender minors as some sort of evidence of a constitutional violation. (Doc. #19, PageID 148). Even assuming that this is true, this is not evidence of discriminatory treatment of transgender minors. This argument ignores the fact that the review of name change requests—and the application of the best interest standard—requires judges to look at each case on its own merits. It is not hard to understand that a judge reviewing an application by a transgender minor whose application is compelled by a diagnosis of gender dysphoria might have more questions about the underlying medical condition than, say, a minor who has asked for a name change related to an adoption. Plaintiffs cannot simultaneously argue that Judge

Kirby's decision was improper because it ignored medical evidence, and then argue that his procedures are unconstitutional because he asks about medical evidence related to the gender dysphoria diagnoses. Either medical evidence is relevant for all purposes, or it is not—Plaintiffs cannot have it both ways.

      **d.**     **Similarity between decisions issued by Judge Kirby.**

Plaintiffs also complain that Judge Kirby's procedures are unconstitutional because he used the same language for several decisions denying name change applications to transgender minors issued at the same time. This contention is incorrect. In fact, this argument goes to the heart of Plaintiffs' misguided attempt to have this Court review and overturn Judge Kirby's reasoning regarding a matter that is squarely within his jurisdiction to decide. Once again, Plaintiffs are complaining about an aspect of how Judge Kirby runs his courtroom—this time, how he writes his decisions-which is well within Judge Kirby's discretion under Ohio law. Plaintiff's invitation for this Court to direct Judge Kirby how to exercise his authority as an Ohio probate judge on matters within his jurisdictions is improper and should be rejected.

Moreover, Plaintiffs misunderstand the difference between an individual *determination* and an individualized *written decision.* Defendants agree that name change applicants are entitled to an individual determination by Judge Kirby of their requests for a name change. This means that Plaintiffs are entitled to present evidence of their individual circumstances supporting their request, and they are entitled to have Judge Kirby listen to that evidence and make his decision based on that evidence. This does *not* mean, however, that applicants are entitled to an individualized *written decision*. The fact that Judge Kirby used some of the same language and legal analysis in several decisions, including the Whitaker application, does not mean that Judge Kirby did not make an individualized determination. It means only that he came to same result

in several cases for the same reasons and he could encapsulate his analysis in those cases based within the framework of a similar decision. It would be absurd to force Judge Kirby to draft stylistically different written decisions just to prove that he considered the individual facts of each case. The allegations in the Complaint establish that Judge Kirby conducted an evidentiary hearing in which he took in and considered evidence about the individual circumstances of Ms. Whitaker's child's prior to making his decision, and there is no allegation in the Complaint that he would do any differently for the other Plaintiffs. (Doc. #1, Complaint, PageID 23-47). The fact that Judge Kirby used the same or similar language across several decisions that he issued at the same time regarding the same subject matter is not evidence of any unconstitutional or discriminatory procedure sufficient to sustain Plaintiffs' claims.

      e.    **Judge Kirby does not impose a rule barring transgender minors from reapplying for a name change.**

Plaintiffs also claim that Judge Kirby has an unconstitutional practice of improperly limiting the ability of transgender minors to re-apply for name change applications when they are denied. This is incorrect.

In claiming that Judge Kirby imposes a rule prohibiting transgender minors from reapplying for a name change, Plaintiffs misrepresent Judge Kirby's language and ignore the larger context and meaning of his decision. Judge Kirby did *not* indicate that he was imposing a hard rule that the applicant could not reapply before reaching the age of 18. He simply directed that the applicant re-apply when the child was older. This is consistent with the reasoning of his decision, which was that the child was not mature enough to knowingly consent to the name change, meaning that the name change was not in the best interest of the child. Because the child's maturity, i.e. psychological age and development, was the deficiency found by Judge Kirby, it is neither surprising nor unreasonable for Judge Kirby to signal to the applicant that the

child could reapply when the child was more mature. The fact that Judge Kirby included this language in his decision is not evidence of an unconstitutional or discriminatory practice.

In addition, Plaintiffs conveniently ignore Judge Kirby's 2016 decision in which he *overturned* the decision of a magistrate who had denied a name change to a transgender minor because the magistrate found that the minor "lacks the age, maturity, knowledge, and stability to make this decision." (See Doc. #15-2, Page ID123). Judge Kirby reversed that decision and granted the name change application, finding just cause to grant the name change application to the transgender minor. Plaintiffs are arguing that Judge Kirby has an unconstitutional practice, which is defined for the purposes of § 1983 liability as a custom "which while not expressly authorized, "is a legal institution that is permanent and established." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). In arguing that Judge Kirby has a practice or established procedure denying transgender minors certain benefits, they cannot cherry pick the decisions that favor them or ignore his decisions that undermine the existence of such a practice or procedure, as they have done here.

**3.     Plaintiffs Shaul and Doe's assumptions about how Judge Kirby might decide their cases are too speculative to support standing in this case.**

As Plaintiffs' correctly note, to meet the test for a "case or controversy" and establish standing, a plaintiff must allege an injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); see, also *Thompson v. Love's Travel Stops & Country Stores, Inc.,* 6th Cir. No. 17-5992, 5998, 2018 U.S. App. LEXIS 24518, at *4. The requirement that an injury be "concrete and particularized" has two discrete parts: concreteness, which is the requirement that the injury be "real," and not "abstract," and

11

particularization, which is the requirement that the plaintiff "personally [have] suffered some actual or threatened injury." Id.

Plaintiffs Shaul and Doe cannot show that they have suffered an invasion of a legally protected right that is concrete and particularized and which is not conjectural or hypothetical. In fact, the injury alleged by these Plaintiffs is *entirely* conjectural and hypothetical, as it is based on their assumptions that Judge Kirby will rule a certain way on their not-yet-heard name change applications, because of his decisions in a handful of similar cases. This is insufficient to satisfy the standing requirement.

Plaintiffs argue that they have alleged sufficient standing by merely reciting that they are fearful that Judge Kirby will apply the same reasoning to deny their name change applications that Judge Kirby applied in several recent cases. This is insufficient to vest standing for these Plaintiffs, as "the mere subjective fear that a plaintiff will be subjected to an allegedly illegal action is not sufficient to confer standing." *White v. United States,* 601 F.3d 545, 554 (6th Cir. 2010) ("Subjective apprehension and a personal (self-imposed) unwillingness" to engage in conduct, "without more," "fail to substantiate an injury-in-fact for standing purposes.").[2] If claiming fear of a future result based on a court's past decisions was sufficient to vest standing, the doctrine of standing would indeed be eviscerated. This is particularly true in a case like this one, where Plaintiff Doe is filing in federal court to preemptively attack a state court's decision that has not been made and/or a state court's procedure that has not been applied. This is not the equivalent of a challenge to an ordinance or state law, which is concrete and will apply unambiguously if the "fearful" party seeks some relief. For example, a would-be public speaker

---

[2] Defendant acknowledges that *White* is a First Amendment case, which this case is not. However, the principle that mere subjective apprehension of illegal conduct is not sufficient to confer standing applies with equal force in this case.

might have standing to challenge an ordinance imposing a prior restraint without applying for a permit to speak, if the speaker could show that the ordinance would automatically require the permit to be denied. That is not the case now.  The pleadings show that Judge Kirby has granted some transgender name change applications and has denied others, and these decisions are based on the facts of each case.  Thus, Plaintiffs' fear that Judge Kirby will deny their applications if filed is too speculative to support standing, as any decision will be based on an individual review of the facts of the case that has not occurred yet.  The pleadings establish that Judge Kirby has decided name-change applications both ways, based on individualized facts.  Plaintiffs cannot presume to know what Judge Kirby's decisions will be in their cases and simply sue him before he can make those decisions.  Even if subjective fear could support standing in some cases, that fear still needs to be objectively reasonable, which it is not in this case. See *Plunderbund Media LLC v. Dewine,* 312 F. Supp. 3d 654, 663 (N.D. Ohio 2018) (A party's subjective fear that they may be prosecuted for engaging in conduct will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable.)

In their Memorandum, Plaintiffs claim that Plaintiff Doe has standing because she has concrete plans to file a name change application for her child.  This is not sufficient to satisfy the test for standing, because concrete plans to file an application is not the same as a concrete, non-hypothetical invasion of a right.  To make the connection between the intent to file and the injury, Plaintiffs would have to show that the name change application *will* be denied, not that merely that they think it *might* be denied based on a few cherry-picked decisions. Thus, Plaintiff's "concrete" plans to file for a name change in the future is not enough to vest standing.

Plaintiff also argues that Plaintiff Doe's standing is not relevant, because the other Plaintiffs have standing to file this suit.  However, as set forth previously, this Court lacks

jurisdiction over Plaintiff Whitaker's claims under *Rooker-Feldman*, which would leave only the claims of Plaintiffs Shaul and Doe. Thus, the lack of standing of Plaintiff Doe is very relevant. As the sole remaining Plaintiffs, Plaintiffs Shaul and Doe lack sufficient standing to support proceeding forward with this case, meaning that the Complaint should be dismissed entirely.

**4.    Equal Protection**

For the purposes of this motion, Defendant does not dispute that transgender status may be a protected class, such that restrictions which treat transgender people differently than non-transgender people ***because of their status as transgender*** may be subject to at least intermediate scrutiny. However, based on the pleadings, it is clear that to the extent that Judge Kirby is treating applicants for name change applications based on categorical distinctions, he is treating those applicants differently because of their individual level of maturity*, not because of their status as transgender or non-transgender.

In their Complaint and again in their Motion, Plaintiffs have confused this issue considerably. Setting aside the fact that Judge Kirby has *also* approved many transgender *minor* name-change applications, the fact that he approved *all* transgender adult name change applications is very significant. The core allegation in this case is that Judge Kirby is biased against transgender name change applicants and discriminates against them because they are transgender. This contention is clearly undermined by Plaintiffs' own pleadings, which show that he routinely grants name-change applications to transgender individuals. In response, Plaintiff claims that the fact that Judge Kirby has approved many transgender name change applications in the past "does not excuse his current pattern and practice of unequal treatment of the Plaintiffs and other transgender minors." (Doc. 161, PageID 160-161). In fact, Judge Kirby's conduct in the past (including both his approvals and denials of transgender name

change applications) *is* his current pattern and practice, and Plaintiffs cannot selectively pick certain decisions to create the appearance of a discriminatory practice.  Plaintiffs are stuck with *all* of Judge Kirby's decision, and those decisions (which are part of the pleadings) establish no discriminatory practice or procedure.

Plaintiff's also contend that the hearing process for transgender minors is different than for non-transgender people, citing the "procedures" discussed above.  Even assuming this is true, there is nothing improper about Judge Kirby approaching the issues in transgender name change hearings differently than in other hearings.  As is clear from the record provided by Plaintiffs, the underlying issues in a name change application for a transgender person will naturally be different from the issues for other name change applications, such as an adoption or divorce. Plaintiffs are operating under the fiction that Judge Kirby should be asking the same type of questions in a transgender name change application that he asks for other name change applications that do not involve gender issues.  Or put another way, Plaintiffs appear to contend that Judge Kirby discriminates against transgender name change applicants by asking them about transgender issues when they are asking for a name change from one gender to another.  This is absurd. Judge Kirby is tasked with determining what is in the best interest of the child.  That determination in the case of a transgender name change application will necessarily be different than in other cases.  What is important is that Judge Kirby makes an individual determination based on the circumstances before him, and the pleadings—including Plaintiffs' Complaint and the decisions attached to Defendants' Motion—show that this is the case.

**CONCLUSION**

For the reasons set forth above and those in his Motion to Dismiss, Defendant Judge Joseph Kirby respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6).

Respectfully submitted,

s/ *Aaron M. Glasgow*
J. Stephen Teetor        (0023355)
E-mail: jst@isaacwiles.com
Aaron M. Glasgow        (0075466)
E-mail: aglasgow@isaacwiles.com
ISAAC    WILES    BURKHOLDER    &
TEETOR, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 220-5170 / P: (614) 365-9516
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Aaron M. Glasgow*
Aaron M. Glasgow        (0075466)

16