# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE LEIGH WHITAKER, et al. | ) ) ) | CIVIL COMPLAINT |
| Plaintiffs, | ) ) | Case No. 1:18-cv-00540-WOB |
| v. | ) ) ) | |
| JUDGE JOSEPH W. KIRBY, | ) ) | JUDGE WILLIAM O. BERTELSMAN |
| Defendant. | ) | |

**EXHIBIT IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY**

Exhibit A: Proposed Surreply

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE LEIGH WHITAKER, et al. | ) ) ) | CIVIL COMPLAINT |
| Plaintiffs, | ) ) | Case No. 1:18-cv-00540-WOB |
| v. | ) ) ) | |
| JUDGE JOSEPH W. KIRBY, | ) ) | JUDGE WILLIAM O. BERTELSMAN |
| Defendant. | ) | |

**[PROPOSED] SURREPLY TO DEFENDANT'S**
**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant has failed to rebut Plaintiffs' showing that their challenge to Defendant's disparate treatment of transgender minors is proper.

Defendant cites for the first time in his reply a recent Sixth Circuit decision on abstention and standing, *Brent v. Wayne Cty. Dep't of Human Servs.*, No. 17-1428/1811, 2018 U.S. App. LEXIS 23777 (6th Cir. Aug. 23, 2018), and argues for the first time that Plaintiff Shaul lacks standing. Neither of these arguments has merit.

Importantly, Defendant also concedes for the first time that he treats transgender applicants differently, claiming that their cases are inherently more "sensitive" and "complex" than those of applicants who are not transgender. In effect, Defendant contends that he is permitted to treat transgender applicants differently because they are transgender and that the Plaintiffs therefore have no recourse in this Court. Rather than supporting dismissal of Plaintiffs' claims, Defendant's argument restates the very issue to be decided by this Court: whether federal law permits a state court to treat litigants differently based upon their transgender status.

[ 1 ]

I.    **ARGUMENT.**

  A. <u>*Brent v. Wayne County* Confirms that *Rooker-Feldman* Does Not Apply to</u>
<u>Plaintiff Whitaker's Forward-Looking Claim and that Plaintiff Whitaker Has Standing.</u>

  Defendant misconstrues the Sixth Circuit's recent opinion in *Brent v. Wayne County Department of Human Services*, which confirms the longstanding rule that the "*Rooker-Feldman* doctrine would not preclude" a claim for injunctive or forward-looking relief.  No. 17-1428/1811, 2018 U.S. App. LEXIS 23777, at *24 (6th Cir. Aug. 23, 2018). *Brent* follows a line of Sixth Circuit authority distinguishing between "backward- and forward-looking claims," and makes clear that "forward-looking" claims are expressly outside the scope of *Rooker-Feldman*.  *Berry v. Schmitt*, 688 F.3d 290, 302 (6th Cir. 2012) (citing *Fieger v. Ferry*, 471 F.3d 637, 646 (6th Cir. 2006)).  Specifically, "the *Rooker-Feldman* doctrine does not bar a plaintiff from attempting to 'clear away' an allegedly unconstitutional state-law policy going forward."  *Brent*, 2018 U.S. App. LEXIS 23777, at *23.  Here, Plaintiff Whitaker prays for an order "prohibiting further violations" of the Equal Protection clause and 42 U.S.C. § 1983.  Doc. 1, PAGEID #: 21.  This is exactly the type of "forward-looking" claim that falls outside the narrow scope of *Rooker-Feldman*.

  *Brent* also supports Plaintiff Whitaker's standing.  In *Brent*, the panel found that the plaintiff lacked standing because he did not allege current or future harm "resulting from the state court's continued reliance on Judge Smith's policy." *Id.* at *24-25.  In contrast, Plaintiff Whitaker has expressly challenged Defendant's refusal to permit her—unlike the parents of all other minors who are not transgender—to bring a new

[ 2 ]

name change petition on behalf of her child while the child is still a minor.  Doc. 1, PAGEID #: 13, ¶ 27; PAGEID #: 51, 54–55, 59.

> B.    Plaintiff Shaul Has Standing.

In his reply, Defendant argues for the first time that Plaintiff Shaul, who has a name change application on behalf of her transgender child pending before him, lacks standing.  Defendant attacks only the existence of an injury in fact, not causation or redressability. But under settled law, Plaintiff Shaul need not wait to be further subjected to the discriminatory procedures at issue in this case in order to challenge them, as she has properly done here.

Under settled law, "a plaintiff need not make costly futile gestures simply to establish standing." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n. 14 (1978)); *see also Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 406 (6th Cir. 1999).  "Although in equal protection cases the constitutional challenge often comes after a plaintiff has applied for a benefit and been rejected, there is nothing that mandates that a plaintiff wait until rejection to file suit." *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 922 (N.D. Ill. 2012) (citing *Bakke*, 438 U.S. at 281 n. 14). Here, to have standing Plaintiff Shaul need not go through the futile process of being further subjected to the disparate treatment and unusual procedures challenged in this case—which Defendant concedes that he applies to transgender minors based on his view that they are uniquely "sensitive" and "complex." Plaintiff Shaul has alleged that she has an application pending before Judge Kirby to change her child's name.  Doc. 1, PAGEID #: 2, ¶ 4(c).  Defendant continued the hearing on Shaul's application

[ 3 ]

indefinitely on August 13, 2018 and expressly referenced Plaintiffs' allegations in this action. Attached as Exhibit B is the Defendant's court order continuing Shaul's application. Like the plaintiffs in *Revelis*, she has alleged that Defendant's discriminatory policies burden her right to have her child's petition considered based on the same procedures and practices applied to the petitions of children who are not transgender.  Doc. 1, PAGEID #: 15, ¶ 32; PAGEID #: 18, ¶ 36(b).

In *Revelis v. Napolitano*, a man filed an immigration petition on behalf of his husband that, if granted, would have allowed his husband to apply for lawful permanent residency.  844 F. Supp. 2d 915, 918 (N.D. Ill. 2012).  At the time, the Obama Administration's policy made it "imminent" that a petition advanced by a same-sex couple would be denied—so while the application was still pending, the couple brought an Equal Protection challenge.  *Id.* at 921, 924.  The defendants claimed that the plaintiffs lacked standing because no decision had yet been reached on the petition.  *Id.* at 921. The court disagreed, instead concluding that "[w]hile [plaintiff] has no right to have his visa petition on [his husband's] behalf granted, he does have a right to have the petition considered 'without the burden of invidiously discriminatory disqualifications.'"  *Id.* at 922.

Similarly, here, Plaintiff Shaul has an application pending before Judge Kirby to change her child's name.  Doc. 1, PAGEID #: 2, ¶ 4(c).  Like the plaintiffs in *Revelis*, she has alleged that discriminatory policies violate her right to have her child's petition considered based on the same procedures and standards applied to petitions on behalf of minors who are not transgender.   Doc. 1, PAGEID #: 15, ¶ 32; PAGEID #: 18, ¶ 36(b).

She does not need to take the futile step of waiting for the petition (which has been indefinitely continued by Defendant) to be further subjected to these discriminatory procedures before suing to vindicate her child's right to equal treatment. *Lac Vieux*, 172 F.3d at 406.

Nor is Plaintiff Shaul required to show that, but for Defendant's discriminatory procedures, her petition would be granted. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). In such cases, the injury in fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.*

C.     Defendant May Not Treat Transgender Applicants Differently.

Defendant concedes for the first time that he treats name change petitions for transgender minors differently. He argues that "there is nothing improper about . . . approaching the issues in transgender name change hearings differently than in other hearings" because "the underlying issues in a name change application for a transgender person will naturally be different from the issues for other name change applications, such as an adoption or divorce." Doc. 30, PAGEID #: 245. Defendant contends that cases involving transgender minors are categorically "sensitive cases" involving what he believes to be "more complex issues." Doc. 30, PAGEID # PAGEID

[ 5 ]

#: 236.  But he does not provide, nor could he, any basis in Ohio law for requiring the parents of a transgender minor to make a greater showing than that required of parents seeking to change their children's name for other reasons.  Instead, Defendant argues that he is permitted to treat transgender minor in these proceedings differently than other minors solely because they are transgender.  That alone, in his view, is sufficient to warrant a different approach, including detailed inquiries into the most sensitive and personal aspects of a child's sexual, social, and medical history.

That argument simply restates and amplifies the discriminatory conduct at issue in the case.  Defendant's argument concedes that he has intentionally singled out this class of petitioners and determined that, solely because they involve transgender minors, these petitions warrant a different and more demanding type of scrutiny than those involving minors who are not transgender. The disparate treatment of these uncontested cases—where both parents and the child agree on the name change—as categorically "sensitive" ones involving "complex issues" is discriminatory on its face. Moreover, while Defendant accepts that discrimination on the basis of transgender status must meet heightened scrutiny, he makes no attempt to show that his actions in treating these petitioners differently are substantially related to a sufficiently important or even legitimate governmental interest.  For example, he does not contend that the government has an important or legitimate interest in overriding the decision-making of the parents in these cases, or in permitting individual judges to grant or deny name change petitions based upon whether a particular name is appropriate for a particular child's gender as perceived by that individual judge.  And even if he did seek to rely on

these asserted interests, none has any footing in Ohio's name change law, which restricts courts to determining whether a proposed name change is for a fraudulent or similarly unreasonable purpose, R.C. 2717.01, or in any other Ohio public policy. Defendant's bare assertion that he may treat transgender people differently is insufficient to meet his burden on a motion to dismiss.

Respectfully Submitted,

Dated:  September 24, 2018

/s/ Joshua R Langdon
Joshua R. Langdon, Ohio Bar #90956
Josh Langdon, LLC
810 Sycamore Street, Fl. 2
Cincinnati, Ohio 45202
Phone: (513) 246-1400
Fax: (513) 263-9000
E-mail: josh@joshlangdon.com

Shannon Minter*
Christopher Stoll*
Asaf Orr*
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Phone: (415) 392-6257
Fax: (415) 392-8442
sminter@nclrights.org
cstoll@nclrights.org
aorr@nclrights.org

Attorneys for Plaintiffs
* *pro hac vice*

**CERTIFICATE OF SERVICE**

I, Joshua Langdon, Esq., do hereby certify that on this 24th day of September, 2018, I caused true and correct copies of the foregoing to be filed via the Court's CM/ECF system, causing service on all counsel of record.

By: s/ Joshua R. Langdon

[ 8 ]