UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CIVIL ACTION NO. 1:18cv540(WOB)**

**STEPHANIE LEIGH WHITAKER, ET AL**                  **PLAINTIFFS**

VS.                    <u>**OPINION AND ORDER**</u>

**JOSEPH W. KIRBY**                                       **DEFENDANT**

This matter is before the Court on a variety of pending motions. (Doc. 15, 20, 31). The Court previously heard oral argument on these motions and took the matter under submission.

After further study, the Court issues the following Opinion and Order.

*Factual and Procedural Background*

This unusual case involves a suit against an Ohio probate judge for denying a name change for the plaintiffs' minor child, an adolescent who is going through a transgender process.[1]

Under Ohio law, jurisdiction to decide name change applications for minors is bestowed on the probate court for the

---

[1] There are two other sets of plaintiffs: one has an application for name change pending before the defendant judge, which has not yet come on for hearing. The other set alleges that they are contemplating filing for a name change for their transgender child, but they have not yet done so. (Doc. 1). Because the judicial immunity analysis that follows is dispositive of the claims of these plaintiffs as well, the Court will not address defendant's other arguments as to why these plaintiffs' claims should be dismissed.

county in which the applicant resides. Ohio Rev. Code § 2717.01(B). In determining whether to grant such a name change, the probate judge must consider "the best interest of the child." *In re Willhite*, 706 N.E.2d 778, 782 (Ohio 1999).

Here, having filed an application for a change from an ordinarily female name to a male name for their child, the parents and the adolescent appeared before the defendant judge, who asked them several questions concerning the wisdom of seeking a name change at that time. (Doc. 1 at 23-48). The questions concerned the maturity of the child, the nature and stage of the transgender process, and whether or not the child had considered all the ramifications. The defendant judge denied the application on the ground that the minor plaintiff was too immature to take such a drastic step at the present time, and the judge stated that the minor could reapply as an adult. (Doc. 1 at 49-60).

The parents disagreed with this ruling, as they believe that the name change is a critical part of the transgender process. Therefore, they timely appealed to the appropriate Ohio Court of Appeals. This appeal is now pending and the appellants have filed their brief. The defendant judge, through counsel, has advised this Court that he does not intend to file a brief in the state appeal because he is not a party to the underlying name change proceeding. The Court of Appeals has scheduled the appeal for

2

submission for disposition without oral argument on November 21, 2018. (Doc. 42-1).

In addition to filing the state court appeal, plaintiffs filed this declaratory judgment action. Plaintiffs have sued the probate judge personally for declaratory relief. (Doc. 1). Defendant promptly moved to dismiss based upon the *Rooker-Feldman* and other abstention doctrines, as well as on the grounds of judicial immunity. (Doc. 15).

The *Rooker-Feldman* doctrine requires a federal court to abstain when a final judgment of a state court is sought to be set aside in a subsequent federal court action on federal constitutional or statutory grounds.

In an attempt to avoid application of this doctrine, plaintiffs responded that they are not attacking the *result* reached by the probate court, but only the *procedures* employed by the defendant probate judge. (Doc. 19). Among these challenged procedures are the practice of the judge in asking extensive "embarrassing" questions concerning the medical steps in the transgender process and whether or not the parties had carefully thought it through. Plaintiffs particularly object to the judge's reference to a celebrity who had undergone a widely publicized transgender process a few years before. The judge implied that this celebrity's change had resulted in a fad, which had influenced the plaintiffs' application.

3

Plaintiffs assert that transgender persons are a protected class, and that it is a denial of equal protection for them to be asked questions in the name-changing process that would not be asked of other applicants. They argue that the probate judge denies more, if not all, minor transgender name-change applications and requires that all be referred to him rather than to a magistrate, as is the usual practice in such cases.

In his memoranda, defendant disputes these allegations.

### *Analysis*

**A. Judicial Immunity**

Plaintiffs have brought this action under 42 U.S.C § 1983, which provides generally that persons who claim their federal constitutional or statutory rights have been violated "under color of state law" may bring an action for redress of such injuries in federal court. Here, plaintiffs claim that they have been denied "equal protection of the laws" under the 14th Amendment to the Constitution of the United States by reason of the procedures employed by the defendant in processing petitions for name changes for minor transgender persons or those contemplating transgender procedures.

They assert that defendant asks more questions of minor transgender petitioners than other petitioners, refers fewer minor transgender petitions to magistrates, and affords "a lower level of deference to parental authority and parents' assessment of their

4

child's best interests" in applications for transgender minors. (Doc. 38-1).

Plaintiffs admit that defendant would be entitled to judicial immunity from money damages, but they claim that such immunity does not apply to the declaratory relief sought in this case. Plaintiffs rely on the following language in § 1983:

> [I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Plaintiffs argue that this statutory language implies that they may seek a declaratory judgment against the defendant judge without violating judicial immunity. Defendant argues that judicial immunity would be violated by permitting declaratory relief in this case.

Authority interpreting this language is sparse, but there is a Sixth Circuit case in point resolving the issue. In *Cooper v. Rapp,* 702 F. App'x 328 (6th Cir 2017), the Court held that an action against a state judge alleging that he had made adverse rulings against the plaintiffs because of racial bias violated the principles of judicial immunity, because no "case or controversy" existed between the plaintiffs and the judge. *Id.* at 333–34.

The Court observed that the defendant judge was not an adversary of the plaintiffs in the state court proceedings, nor

5

was he acting as a judicial administrator of the statute at issue. *Id.* Instead, the judge "acted as a disinterested judicial adjudicator, bound to decide the issues before him according to the law." *Id.* at 333.

Here, Judge Kirby had no personal stake in the grant or denial of the name change, but rather he was performing his judicial duty to decide whether the name change was in the best interest of the child. As such, pursuant to *Cooper*, he "is not amenable to a suit for declaratory relief under § 1983." *Id.*

In other words, the defense of judicial immunity is valid, and this action must be dismissed on that ground. The doctrine of judicial immunity is essential to the proper functioning of our courts. If not for that immunity, the judge could be sued by the losing party in every case, especially if the judge is reversed on appeal. This would result in chaos in the court system. For similar reasons, legislators, prosecutors, and newspapers which accurately report legal proceedings are entitled to similar immunity.

### B. Abstention

Although the Court has held that defendant is immune from suit in this matter, in order to facilitate appellate review, if any, the Court will also discuss the additional argument by defendant that, even if he were held not to be entitled to judicial immunity, the Court ought to abstain from hearing this case.

6

Our nation is unique in that it is composed of a voluntary union of fifty-two *sovereign* states, rather than a number of provinces which are subsidiary units of the national government. This distinction has not been easy to apply. Many conflicts have arisen concerning the authority of the nation vis à vis the sovereignty of the states. One such argument led to the Civil War.

The national government has its own set of courts, as does each state. Frequently state and federal courts will have jurisdiction over the same matter, whether it be an automobile accident in which the parties are of diverse citizenship, or, as here, where federal constitutional rights are at issue.

In order to minimize duplication and perhaps conflicting rulings in such actions, the federal courts have developed a system of rules known as the "abstention" doctrines. If any of these doctrines applies, a federal court may (or, in some cases, must), depending on which doctrine is applicable, dismiss the case or defer ruling on it in deference to the state court. Many cases give rise to consideration of these abstention doctrines, which encompass a large variety of legal actions and issues.

In a highly respected multi-volume text on federal practice, 121 sections are devoted to the various abstention doctrines. 17A James Wm. Moore et al., *Moore's Federal Practice* §§ 122.01-122.121

7

(3d ed. 2018). The Court does not feel the need to discuss them all, although at least three are relevant here.

### 1. *Pullman* Abstention[2]

Under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), "federal courts should abstain when litigants challenge state actions on federal constitutional grounds in federal court and the answer to an unsettled question of state law might eliminate the need to decide the federal constitutional question or materially alter the way the federal court would view that question." 17A James Wm. Moore et al., *Moore's Federal Practice* § 122.20 (3d ed. 2018).

This is precisely the case here. Plaintiffs have made the same arguments attacking the propriety of defendant's procedures in their state appeal. If the state appellate court agrees with plaintiffs' condemnation of these procedures, it may well hold that employing them is improper under state law, thus "eliminat[ing] any need to reach the federal constitutional issue." *Id.* at § 122.21. The Court notes that only a *possibility* that the need to decide the federal question would be eliminated is required. *Id.* at § 122.23(f) (discussing Sixth Circuit cases).

If the Ohio Court of Appeals reverses the denial of the name change on the ground that the procedures employed were an abuse of

---

[2]The abstention doctrines are generally named after the (usually) Supreme Court decisions which established them.

discretion or violative of state criteria, it would be unnecessary for this Court to decide the various constitutional issues that have been raised in this federal case.

### 2. The *Rooker-Feldman* Doctrine

Based on two Supreme Court decisions, the *Rooker-Feldman* doctrine "bars a state-court loser from asking a lower federal court to review a state-court judgment directly." 18 James Wm. Moore et al., *Moore's Federal Practice* § 133.33[2][e][i] (3d ed. 2018). To avoid this doctrine, the plaintiffs here have asserted that they are not attacking the result reached by the defendant judge in the name-change proceeding, but only the procedures used by him. This approach does prevent the application of the doctrine. *See Kovacic* v. *Cuyahoga Cnty. Dept. of Children and Family Servs.*, 606 F.3d 301, 308-312 (6th Cir. 2010).

### 3. *Wilton*: District Court Has Discretion

In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court held that a discretionary standard governs a district court's decision to stay or dismiss a declaratory judgment action due to the pendency of parallel court proceedings. The Sixth Circuit, following *Wilton*, has likewise applied such a discretionary standard and held that the pendency of a state court action with the same or similar issues is a sufficient basis for the federal court to decline to exercise its discretion under the Declaratory

9

Judgment Act. *See Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968-69 (6th Cir. 2000).

This Court, in the exercise of its discretion, believes that this type of abstention is appropriate because the issues in the two cases are virtually identical and the state court can resolve them without deciding the federal constitutional issues.

## *Conclusion*

The proper way to challenge an adverse judgment is to appeal, not to sue the judge. Plaintiffs here have appealed Judge Kirby's decision not to grant their child's name change to the Ohio Court of Appeals. This is the appropriate way to proceed. The Ohio court can decide the appeal based on the issue of whether or not Judge Kirby abused his discretion in denying the name change. Also, it can review Judge Kirby's procedures, if it thinks that is appropriate. This can be done without addressing the complex federal constitutional issues, although that court can address them, if it so desires.

If plaintiffs are aggrieved by the decision of the appellate court, they can seek redress from the Supreme Court of Ohio and, if necessary, the Supreme Court of the United States. All of these options are open to them, but directly suing any of the judges is not.

Therefore, having heard from the parties, and being sufficiently advised,

**IT IS ORDERED** that defendant's motion to dismiss (Doc. 15) be, and is hereby, **GRANTED**; plaintiff's motion to expedite (Doc. 20) be, and is hereby, **DENIED AS MOOT**; and plaintiffs' motion for leave to file surreply (31) be, and is hereby, **GRANTED NUNC PRO TUNC**.  A separate judgment shall enter concurrently herewith.

This 30th day of October, 2018.



Signed By:
William O. Bertelsman
United States District Judge